IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JESUS VARGAS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-4231-CV-C-NKL |
| ) | |
| ) | |
| STEVE LONG, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

ORDER

Plaintiff Jesus Vargas, Jr., claims that Defendant Steve Long, and others, violated his federal constitutional rights by improperly detaining him beyond the maximum release date on his criminal sentence and falsely imprisoned him under Missouri law. Pending before the Court are Vargas's motion for partial summary judgment [Doc. # 77] and Long's motion for summary judgment [Doc. # 80]. For the following reasons, the Court GRANTS Long's motion and DENIES Vargas's motion.

I. Factual Background

Plaintiff Jesus Vargas, Jr., is a Texas resident and former parolee of the Missouri Department of Corrections (Missouri DOC). Defendant Steve Long served as Chairman of the Missouri Parole Board from July 2007 to May 2009. Defendant Laura Barker served as senior office support assistant in Missouri DOC's parole division during the relevant time period. Defendant Mary Kay Brand served as administrative office

1

assistant/clerical supervisor III for Missouri DOC's parole division during the relevant time period. Defendant Kimberly Luebbering served as Vargas's interstate parole officer in Missouri DOC's parole division during the relevant time period. Defendant Paul Watts served as Vargas's supervising officer and parole officer in Missouri DOC's parole division during the relevant time period. Defendant Wanda LaCour served as Deputy Compact Administrator for the Interstate Compact during the relevant time period. Defendant Page McClure served as probation administrator/district administrator in Missouri DOC's parole division during the relevant time period.

In 2002, Vargas was paroled by the Missouri Parole Board and moved to Texas, where he was supervised by the Texas Department of Corrections. As late as November 12, 2008, Missouri DOC's records reflected Vargas's "maximum release date" as October 27, 2006. While on parole in Texas in 2006, Vargas received a one-year sentence and a 110-day jail sentence for criminal convictions. On April 3, 2006, Vargas missed a scheduled meeting with his Texas parole officer. Vargas met with that officer on April 7, 2006. On April 10, 2006, Texas issued an Offender Violation Report to Missouri regarding Vargas. On May 1, 2006, LaCour issued a warrant to return Vargas to Missouri. The parties agree that Missouri records listed Vargas as "declared absconder" at least as early as this date.

While on parole in Texas in 2008, Vargas received a 200-day jail sentence on a criminal conviction. On May 6, 2008, Brand communicated to the Ft. Bend County Sheriff's office that Missouri could not make a determination on Vargas's return until he

2

had been given a probable cause interview. Also in May of 2008, Barker calculated a new maximum release date of October 30, 2008, for Vargas, citing parole violations. This recalculated date was not binding on the Missouri Parole Board.

In September 2008, Vargas waived extradition to Missouri. Vargas also waived his probable cause hearing for his alleged parole violations.[1] On October 10, 2008, Barker notified Lt. Ed Griffin that Vargas could be picked up at the Ft. Bend County Jail in Richmond, Texas. Vargas was taken to a Missouri facility, where he informed staff members that the maximum release date on his Missouri sentence had passed. Vargas sent a note to that effect to that facility's records office on November 10, 2008. The parties dispute the extent to which Vargas notified Missouri officials of his parole violations and the extent to which Missouri officials were aware of Vargas's parole violations. On November 11, 2008, Missouri DOC employee Stephen Mueller released Vargas from custody without consulting the Missouri Parole Board.

Missouri Revised Statute 217.730.1 deals with "maximum release date." It provides:

> The period served on parole...shall be deemed service of the term of imprisonment and, subject to the provisions of section 217.720 relating to an offender who is or has been a fugitive from justice, the total time served may not exceed the maximum term or sentence.

The portion of Missouri Revised Statute 217.720 that directly refers to a finding of "fugitive from justice" provides:

---

[1] Long objects to this statement of fact on grounds that "waiver" is a legal conclusion, but Long does not assert any facts suggesting that Vargas did not effectively waive his probable-cause hearing. The Court thus treats the fact as undisputed.

> 3. An offender for whose return a warrant has been issued by the board shall, if it is found that the warrant cannot be served, be deemed to be a fugitive from justice or to have fled from justice. If it shall appear that the offender has violated the provisions and conditions of his parole or conditional release, the board shall determine whether the time from the issuing date of the warrant to the date of his arrest on the warrant, or continuance on parole or conditional release shall be counted as time served under the sentence. In all other cases, time served on parole or conditional release shall be counted as time served under the sentence.

But Missouri Revised Statute 217.720 elsewhere provides:

> 2. ... If at any time during release on parole or conditional release the offender is arrested for a crime which later leads to conviction, and sentence is then served outside the Missouri department of corrections, the board shall determine what part, if any, of the time from the date of arrest until completion of the sentence imposed is counted as time served under the sentence from which the offender was paroled or conditionally released.

Vargas is suing Defendants under Section 1983 and under Missouri's common law action for false imprisonment. Vargas claims that LaCour issued an invalid parole warrant; that LaCour, McClure, Luebbering, Brand, and Barker imposed backtime on his sentence without a formal revocation; that McClure returned Vargas to Missouri DOC without proper authority; that LaCour and Luebbering failed to investigate when notified of Vargas's prolonged detention; that LaCour, McClure, Luebbering, Brand, and Barker denied Vargas his statutory liberty interest provided by the "maximum release date" statute; that LaCour, McClure, and Barker caused Vargas to be arrested, detained, and incarcerated without jurisdiction to do so; that Luebbering caused Vargas to be detained after his recalculated release date; and that Long instituted a department policy that facilitated these alleged violations. Vargas also claims that these same actions render liable all of these Defendants for false imprisonment under Missouri common law.

4

## II.     Discussion

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

### A.     Vargas's Section 1983 Claims

"Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right."  *Omni Behavioral Health v. Miller*, 285 F.3d 646, 650-51 (8th Cir. 2002).  In order to survive summary judgment on the grounds of qualified immunity, Vargas must: "(1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right."  *Id*. at 651.  To recover individual damages against an official on a Section 1983 claim for prolonged incarceration, a plaintiff has to show that the defendant "was personally involved in, or directly responsible for, [plaintiff's] prolonged incarceration, and that [defendant] was deliberately indifferent to [plaintiff's] rights."  *Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009) (internal citations omitted).  "The few decisions that have based a finding of deliberate indifference on a failure to investigate have uniformly involved defendants who had the *duty* to review the inmate's status and the *authority* to release him.  *Id*. (emphasis in original).

Vargas first claims that the Defendants violated a clearly established right by issuing an invalid and unserved parole warrant. In arguing this claim, Vargas refers only to Missouri state law. Vargas argues that a liberty interest for Section 1983 purposes can arise from the laws of the states. But Section 1983 only protects federal constitutional rights, and the mechanism by which Section 1983 protects state-created rights is the Due Process Clause. *See Davis v. Scherer*, 468 U.S. 183, 193 n.11 (1984). In fact, "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Id.* at 194.

Turning to Vargas's due process rights, the Supreme Court in *Morrissey* addressed the concern that parolees are often held for a long time before a final revocation decision is made, and that parolees are often arrested far from the state institution overseeing their parole, by requiring a due process hearing soon after a parolee's arrest. *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972). The purpose of this hearing is to determine whether there is "probable cause to hold the parolee for the final decision of the parole board revocation. Such a determination would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision." *Id.* at 487.

Here, it is undisputed that Vargas waived his due process hearing. Thus, even if Vargas's parole warrant was deficient as a matter of state law, Vargas cannot show that the Defendants violated his clearly established due process rights, because Missouri DOC established through Vargas's waiver that it had the right to detain him until a final

6

revocation hearing. The Defendants are thus entitled to qualified immunity on this alleged right.

Vargas next claims that Defendants violated his clearly established rights by imposing backtime without a formal revocation of parole. Vargas relies only on federal constitutional law for this point. Vargas cites *Sample* for the proposition that "[b]acktime cannot be imposed without a formal revocation of parole by the Parole Board," and that "the federal constitution...require[s] a hearing and formal ruling before parole can be revoked and backtime thereby imposed." *Sample v. Diecks*, 885 F.2d 1099, 1106-07 n.4 (3rd Cir. 1989), *citing Morissey v. Brewer*, 408 U.S. 471, 489 (1972). But Vargas has not produced any fact suggesting that backtime was actually imposed or that the Missouri Parole Board revoked Vargas's parole without a hearing. Rather, Barker only calculated a suggested new release date for Vargas, which Vargas admits was not binding on the Parole Board. Further, the Defendants' alleged actions forming the basis of Vargas's complaint all consist of measures to eventually bring Vargas before the Missouri Parole Board for a final revocation hearing.

In reality, Vargas is challenging Missouri DOC's right to confine him in the period leading up to his final revocation hearing before the Parole Board. It is undisputed that Vargas waived his probable cause hearing. In light of the Supreme Court's holding in *Morrissey*, Vargas cannot show that he had a clearly established right as a matter of federal constitutional law to be released between the probable cause hearing and his final determination of revocation. The two cases Vargas principally relies on to demonstrate

7

that he had a clearly established constitutional right do not mention a waiver of probable cause hearing, and thus do not support his claim that the rights he asserts are clearly established. *See, generally, Sample v. Diecks*, 885 F.2d 1099 (3rd Cir. 1989); *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985). Vargas has not argued that any of the Defendants needlessly delayed his final revocation hearing in order to prolong his incarceration. The Defendants are thus entitled to qualified immunity for this alleged right as well.

Vargas argues that the Defendants violated his clearly established rights by failing to investigate reports that Vargas was unlawfully detained. In the Eighth Circuit, plaintiffs bringing "failure to investigate" claims for prolonged incarceration must establish that the defendant had a duty to investigate the claim and the unilateral authority to release the plaintiff. *Dahl v. Weber*, 580 F.3d 730, 734 (8th Cir. 2009). The Court rejects Vargas's argument that the Third Circuit's decision in *Sample*, which did not impose this requirement, controls this case. *Dahl* is controlling authority, is more recent than *Sample*, and did not equivocate in its holding. With regard to Vargas's claimed violations of this right, Vargas has not established, or even argued, that any particular Defendant had both the duty to investigate his claims and the unilateral authority to release him. The Defendants are thus entitled to qualified immunity on this alleged right.

Vargas claims that the Defendants violated his clearly established rights by causing him to be detained and returned to Missouri. Vargas argues that the language in Mo. Rev. Stat. 217.720.2, that "The Parole Board...shall cause the offender to be brought

8

before it" mandates that the return of any offender be first approved by the Missouri Parole Board. But this language does not explicitly require approval or foreclose the possibility that the Missouri Parole Board could delegate this task to Missouri DOC employees. Thus, in the absence of some authority interpreting the requirements suggested by Vargas, this alleged right is not clearly established. Further, this claim is based on state law, and because Vargas waived his due process hearing, he cannot demonstrate the violation of a clearly established due process right.

Vargas argues that the Defendants violated his clearly established rights by denying Vargas his state statutory right to be released on his maximum release date. Vargas argues that when a state creates a statutory right to release from prison, that state must "follow minimum due process" when abrogating that liberty, quoting *Haygood v. Younger*, 769 F.2d 1350, 1355 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020. But the Court has already determined that because Vargas waived his due process hearing, Missouri DOC had the right, under federal due process standards, to confine Vargas until his final revocation hearing. *See Morrissey*, 408 U.S. at 487. Defendants are thus entitled to qualified immunity on this alleged right.

Vargas argues that the Defendants violated his clearly established rights by detaining Vargas after his maximum release date without jurisdiction. Vargas argues that Missouri DOC lost jurisdiction to detain him after his maximum release date passed, and that the Due Process Clause protects his right not to be detained after Missouri DOC lost jurisdiction, citing *Slone v. Herman*, 983 F.2d 107, 109-110 (8th Cir. 1993). Because this

9

claim also relies on the Due Process Clause, it also fails in light of Vargas's having waived his due process hearing. *See Morrissey*, 408 U.S. at 487.

Finally, Vargas claims in the alternative that the Defendants violated his clearly established right by detaining him for thirteen days after his new release date as recalculated by Barker. Vargas does not cite to any authority suggesting that he had a clearly established right to be released on that day. It is undisputed that this date was not binding on the Missouri Parole Board, and thus was merely a working date for Missouri DOC in deciding how to handle Vargas's case. Vargas has failed to demonstrate that he had a clearly established right to be released on this date, and thus Defendants are entitled to qualified immunity as to this alleged right.

Because Vargas cannot demonstrate that any of the Defendants violated one of his clearly established federal rights, all of the Defendants are all entitled to qualified immunity on all of Vargas's Section 1983 claims, and are thus entitled to summary judgment on these claims.

### B. Vargas's Claim for False Imprisonment

Although Vargas makes broad, conclusory statements that all Defendants are liable for false imprisonment, Vargas only actually addresses the actions of Defendants McClure, LaCour, and Luebbering, in arguing his claim for false imprisonment. Vargas argues that LaCour instigated Vargas's illegal arrest by issuing a facially invalid warrant that she knew would not be served on Vargas as required by state law. Vargas argues that McClure instigated Vargas's continued illegal detention by ordering him to be brought to

10

Missouri without prior approval from the Missouri Parole Board. Vargas argues that Luebbering instigated his continued illegal detention by failing to submit a required violation report to the Missouri Parole Board. To establish a claim of false imprisonment in Missouri, Vargas must show that he was confined without his consent and without legal justification. *Rustici v. Weidemeyer*, 673 S.W.2d 762, 767 (Mo. banc. 1984).

Long argues that Vargas's claim for false imprisonment fails because the Defendants are all entitled to official immunity under Missouri law. Official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). "Whether immunity applies is an issue of law to the extent there is no essential dispute as to the operative facts." *Richardson v. Sherwood*, 337 S.W.3d 58, 63 (Mo. Ct. App. 2011). "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Nguyen v. Grain Valley R-5 Sch. Dist.*, 353 S.W.3d 725, 730 (Mo. Ct. App. 2011). The burden is on the defendant to prove that the allegedly tortious acts were discretionary. *Id*. n.4.

It appears the actions that Vargas complains of were all discretionary in nature, because they were all chosen means toward the end of bringing Vargas before the Missouri Parole Board for a final revocation hearing. *See Richardson v. Sherwood*, 337 S.W.3d at 64 ("[A]s a general proposition, probation officers exercise the kind of discretion that could qualify them for the defense of official immunity."). Vargas relies

11

on narrow readings of isolated provisions of Missouri statutes to argue that Defendants exercised their discretion incorrectly in several situations. For example, Vargas does not appear to dispute that LaCour had discretion to issue a parole warrant for his arrest, but argues that the warrant she issued was not sufficiently detailed under Missouri law. Vargas's arguments illustrate a misunderstanding of the meaning of "discretionary" in official immunity law. Rather, "the court's focus should be on whether the officer is performing a discretionary function, not on whether the officer has discretion to do an allegedly wrongful act while discharging that function. . . . The purpose of the doctrine of official immunity is to protect public officers from civil liability for conduct that would otherwise be actionable." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653-54 (Tex. 1994).

Further, even if not protected by official immunity, McClure and LaCour are entitled to summary judgment because Vargas cannot prove a claim of false imprisonment against them. Vargas has not presented, and the Court is not aware of, a single Missouri case even assessing the liability of parole officers and staff in a claim for false imprisonment. Vargas relied for his argument on Missouri cases examining the liability of police officers for wrongful arrest, which have held that "all persons who directly procure, aid, abet, or assist in an unlawful imprisonment are liable as principals." *Rustici v. Weidemeyer*, 673 S.W.2d 762, 768 (Mo. 1984). Vargas summarily argues that the allegations in his Section 1983 claim also support a claim for false imprisonment. But

12

Vargas's allegations do not demonstrate that Vargas's arrest was "unlawful" for purposes of unlawful imprisonment.

In Missouri, an arrest that does not require a warrant is privileged from claims of false imprisonment so long as probable cause existed at the time of the arrest, even if the suspect is later proved innocent. *See Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986) (applying Missouri law). Vargas has not argued that Defendants lacked probable cause to believe Vargas violated parole. In fact, Vargas admits to actions that are violations of his parole conditions.

Vargas argues that LaCour is liable for issuing a facially invalid warrant. A Missouri court reviewing a claim against a police officer for false arrest has held that an arrest is not justified for purposes of a false imprisonment claim if it is based on a facially invalid warrant. *Wehmeyer v. Mulvihill*, 130 S.W. 681, 684 (Mo. Ct. App. 1910). Although LaCour issued a parole warrant for Vargas, Mo. Rev. Stat. § 217.720 provided LaCour discretion to either arrest Vargas herself or issue a warrant. Thus, it is more appropriate to treat this as a case where a warrant was not necessary, in which case the arrest was legal because probable cause existed. *See Nelson v. Balazic*, 802 F.2d 1077, 1079 (8th Cir. 1986) (noting that a parole officer's authority to arrest a parolee under this statute is "closely analogous to that of a police officer when determining whether probable cause exists to make an arrest).

If the Court were to treat this as a case where a warrant were required, the Court would dismiss Vargas's claim that the parole warrant is facially invalid because LaCour

13

Case 2:10-cv-04231-NKL Document 108 Filed 02/29/12 Page 13 of 16

is entitled to absolute immunity for the quasi-judicial function of issuing a warrant for a parole revocation hearing. "Even when a State is subject to tort liability, it and its governmental agencies are immune to the liability for acts and omissions constituting (a) The exercise of a judicial or legislative function...." RESTATEMENT (SECOND) OF TORTS § 895B(3). This immunity may be extended to government officers performing quasi-judicial functions. *See id.*, *comment c*. Vargas has not pointed to a Missouri case assessing a parole officer's civil liability for issuing a defective parole warrant. But other states have held that parole officers are entitled to quasi-judicial immunity for performing judicial functions, or functions that are "an integral part of a judicial or quasi-judicial proceeding." *Taggart v. State*, 822 P.2d 243, 252 (Wash. 1992). The Court finds that issuing a parole warrant for arrest in preparation for a parole revocation hearing is a quasi-judicial function entitled to immunity under Missouri law. *See* Mo. Rev. Stat. § 544.030 (providing for issuance of criminal warrants by associate circuit judges); *cf. Johnson v. Kelsh*, 664 F. Supp. 162, 165-66 (S.D. N.Y. 1987) (finding absolute immunity under federal law for a parole officer issuing and executing a parole warrant and presenting evidence to a hearing officer).

To the extent that Vargas argues that the Defendants are liable for continuing to confine him after his sentence was completed, the appropriate standard is that "a jailer is liable for false imprisonments if he knows or should know that an arrest was illegal and that he has no right to imprison the person arrested." *Rustici v. Weidemeyer*, 673 S.W.2d 762, 768 (Mo. 1984). Although there is no evidence that McClure instigated Vargas's

14

arrest, McClure's alleged actions in ordering that Vargas be brought to Missouri could be framed as instigating McClure's continued confinement. But even if Vargas could show that his arrest was illegal, Vargas waived his due process hearing, which was designed to assess the sufficiency of his arrest for parole violation and to determine whether Defendants had the right to detain Vargas until a final revocation hearing. Thus, Vargas cannot prove that the Defendants knew or should have known they had no right to continue to imprison him. Rather, the Defendants were entitled to rely on Vargas's waiver as "sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision." *Morrissey v. Brewer*, 408 U.S. 471, 487 (1972); *see also Corbett v. Dwyer*, 345 F. Supp. 2d 237, 241 (N.D. N.Y. 2004) (holding that a parolee arrested for violating parole conditions was barred from claiming false arrest because the parolee admitted probable cause existed for the arrest by later pleading guilty).

Vargas also claims that Luebbering "had a ministerial duty to submit a violation report to the Parole Board." [Doc. # 82 at 46]. Vargas's false imprisonment claim against Luebbering fails on the merits as a matter of law, because a claim for false imprisonment cannot be based on a failure to act. *See Gibbs v. Blockbuster, Inc.*, 318 S.W.3d 157, 170 (Mo. Ct. App. 2010).

## III. Conclusion

Accordingly, it is hereby ORDERED that Vargas's motion for partial summary judgment [Doc. # 77] is DENIED and Long's motion for summary judgment [Doc. # 80] is GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  February 29, 2012
Jefferson City, Missouri